IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIE HOPPMAN,

      Plaintiff,

v.

LIBERTY MUTUAL INSURANCE
COMPANY, a foreign business
corporation,

      Defendant.

3:17-cv-00402-BR

OPINION AND ORDER

**CRAIG A. CRISPIN**
**ASHLEY A, MARTON**
Crispin Employment Lawyers
1834 S.W. 58th Ave., Suite 200
Portland, OR 97221
(503) 293-5770

      Attorneys for Plaintiff

**JAMES M. BARRETT**
**KELLY S. RIGGS**
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
222 S.W. Columbia St., Suite 1500
Portland, OR 97201
(503) 552-2140

      Attorneys for Defendant

**BROWN, Senior Judge.**

    This matter comes before the Court on Defendant Liberty

Mutual Insurance Company's Motion (#24) for Summary Judgment.

1 – OPINION AND ORDER

The Court concludes the record is sufficiently developed, and, therefore, oral argument is unnecessary.

For the reasons that follow, the Court **GRANTS** Defendant's Motion.

## **BACKGROUND**

The following facts are taken from the Joint Statement of Agreed Facts (#44), pleadings, and summary-judgment materials filed by the parties and are undisputed unless otherwise indicated.

In 2003 Plaintiff Valerie Hoppman began working for Safeco as a Senior Claims Representative. In 2006 Plaintiff began working for Safeco remotely from home Monday through Friday from 8:00 a.m. to 4:30 p.m. In 2009 Safeco was acquired by Defendant. Plaintiff continued working as a Complex Claims Resolution Specialist for Defendant. Plaintiff also continued to work remotely from home and was assigned to a team of claims representatives. Plaintiff reported to a Claims Team Manager who provided direction primarily by telephone or email.

In November 2014 Plaintiff contends she began feeling "overwhelmed" with the amount of work she was expected to complete. Plaintiff alleges she contacted Cary Henspeter, her supervisor at that time, and told Henspeter about her anxiety and stress.

In December 2014 Plaintiff took medical leave for a low-back condition.

In January 19, 2015, Plaintiff's treating physician, Kristina Harp, M.D., signed a medical note indicating Plaintiff was able to return to work on February 1, 2015, and "may work 8 [hours a] day with scheduled breaks."

In February 2015 Plaintiff returned to work. Plaintiff contends when she returned to work she advised Henspeter of her work restrictions, *i.e.*, that she was only permitted to work up to 40 hours per week with scheduled breaks. Henspeter does not recall receiving Dr. Harper's note or otherwise learning that Plaintiff had any work restrictions.

In July 2015 Plaintiff was transferred to a new Claims Team Manager, Donna Fromm. Although Fromm was aware of Plaintiff's prior medical leave, Defendant contends Fromm was not aware of Plaintiff having any work restrictions at that time and Plaintiff does not recall telling Fromm about her 40-hour work-week restriction.

On September 11, 2015, Fromm counseled Plaintiff about a "rush" request for a settlement amount that was in excess of Fromm's settlement authority. Plaintiff responded:

> Thanks. I am trying to keep up the best I can. There is just too much work and not enough time. When I returned to work, my doctors said it was ok to work up to 40 hours a week with scheduled breaks. Well, my workload demands are far in excess of 40 hours a week. I don't know what the solution is, but this situation is pretty discouraging.

On October 8, 2015, Plaintiff again emailed Fromm about her workload and asked to be "taken off claims" for two weeks. Fromm complied with Plaintiff's request and did not assign any new

3 – OPINION AND ORDER

claims to her during that time.

Following Plaintiff's email on October 8, 2015, Plaintiff had only general conversations with Fromm about her work.

On October 22, 2015, Dr. Harp took Plaintiff off work "due to medical issues" from October 23, 2015, through November 22, 2015.

On October 25, 2015, Plaintiff applied for short-term disability benefits through Defendant's disability plan administered by Liberty Life Assurance Company of Boston (Liberty Life). Plaintiff's request was approved, and she received short-term disability benefits from October 25, 2016, through April 2016.

During this medical leave Plaintiff periodically reported to Fromm that her doctor had not released her to return to work. The parties agree Plaintiff made those reports on November 20, 2015; December 7, 2015; December 31, 2015; January 29, 2016; and February 29, 2016.

On December 7, 2015, Plaintiff sent an email to Laurie Whalen, a Leave Associate in Defendant's Human Resources Support Center, and copied Fromm on the email. Plaintiff stated: "I am requesting accommodations regarding my job duties under the ADA due to depression which has been diagnosed by my doctor. The medical records have already been provided." The parties agree this was a request for accommodation. Whalen advised Plaintiff to contact Allyson Jay, an Employee Relations Specialist for Defendant, regarding "the option for an ADA."

On December 9, 2015, Plaintiff contacted Jay about the December 7, 2015, request and Jay responded:

> It is my understanding that you currently are out on a pending STD [short term disability] claim? Do you have an anticipated return to work date? Certainly we are open to talking through what would help you performance [*sic*] the functions of your role as a Claims Specialist once you are able to return to work but first and foremost we want you to be well while out on leave. You are more than welcome to contact me if you would like to talk further.

On December 31, 2015, Plaintiff responded to Jay:

> It is my understanding that I am currently on short term disability. I anticipate that my doctor may release me to return to work after the first of the year. I will discuss potential job modifications with my doctor to help prevent relapse. I am open to any suggestions you may have with regard to reasonable accommodations.

On January 24, 2016, Jay called Plaintiff to discuss, among other things, Plaintiff's request for accommodation. Jay told Plaintiff that a discussion of an accommodation was premature because Plaintiff had not been released to work by her doctor and did not have any expected return-to-work date.

In March 2016 Plaintiff applied for long-term disability benefits through Liberty Life.

On April 21, 2016, Liberty Life denied Plaintiff's request for long-term disability and stated:

> The Long Term Disability policy insures full time employee's [*sic*] working a minimum of 37.5 hours a week. Dr. Harp has confirmed that you are capable of working 40 hours per week. The medical records do not support that you are unable from a physical or mental standpoint to perform the material and substantial duties of your occupation on a full time basis, thus, you do not meet the definition of disability and your claims has been denied.

On April 28, 2016, Plaintiff emailed Jay about the status of her long-term disability claim and stated:

> I have not received a letter from the Disability adjuster regarding the Long Term Disability claim either. My medical records have already been provided. If there is something additional you need, please let me know. As you are aware, I have made previous requests for reasonable accommodations concerning my job and I have suggested discussing aspects of the workload, the case pending, and the paralegal work currently required. I am open to discussing any other suggestions regarding potential accommodations.

Jay responded to Plaintiff that the letter regarding Plaintiff's long-term disability claim would come from Boston and could take a few days. Jay further stated:

> In concerns [*sic*] to the request for ADA, we would look at those options once your LTD appeal is complete since you stated you were planning on appealing. You stated you[r] Doctor has not released you so I don't think we are at the point of reviewing that unless he has in fact released you.

On April 28, 2016, Defendant notified Plaintiff it "would begin the recruiting process shortly" for Plaintiff's position because Plaintiff had been off from work for over 26 weeks and, therefore, Defendant was allowed to fill her position. Defendant also advised Plaintiff:

> Please notify us when you are able to return to work. If we have filled your position, we will determine if we have an available position for which you qualify. If we do not, you may be eligible for severance as outlined in the Severance Pay Plan.

On June 27, 2016, Plaintiff filed a complaint with the Oregon Bureau of Labor and Industries (BOLI) and alleged Defendant had engaged in "unlawful employment practices on the basis of [her] sex, disability and [her] invocation of the Oregon

Family Leave Act (OFLA)" and that Defendant had subjected her to "different terms and conditions, a hostile work environment, failed to engage in the interactive process and filled [her] position while [she] was on medical leave of absence."

On August 8, 2016, Defendant responded to Plaintiff's BOLI complaint and stated Plaintiff had not been released by her doctor to return to work, her employment had not been terminated, and she was on leave pending resolution of her long-term disability claim.

In September 2016 BOLI dismissed Plaintiff's complaint.

On November 21, 2016, Dr. Harp, Plaintiff's treating physician, provided a work release for "full duty 40 [hour] work week with AM break PM break and scheduled lunch." Plaintiff admits she did not provide this release to Defendant because she felt "it was too late."

In January 2017 Plaintiff began work as a Senior Claims Examiner with a different employer, Philadelphia Insurance Company.

On February 23, 2017, Defendant terminated Plaintiff's employment.

On March 13, 2017, Plaintiff filed a Complaint in this Court in which she alleges Defendant failed to accommodate her disability under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12112(5)(a), and the Oregon counterpart to the ADA (referred to herein as OADA), Oregon Revised Statutes §§ 659A.112 and 659A.118.

7 – OPINION AND ORDER

On March 28, 2017, Plaintiff filed her First Amended Complaint (FAC) in which she corrected the name of Defendant.

On January 12, 2018, Defendant filed its Motion for Summary Judgment as to both of Plaintiff's claims.

## **STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R. Civ. P. 56(a). The moving party must show the absence of a dispute as to a material fact. *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005). In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial. *Id*. "This burden is not a light one . . . . The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must draw all

8 – OPINION AND ORDER

reasonable inferences in favor of the nonmoving party. *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010). "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted). A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment." *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011) (citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)). When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006). If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

### DISCUSSION

Defendant contends it is entitled to summary judgment on each of Plaintiff's claims on the grounds that Plaintiff does not have a qualifying "disability" and Defendant does not have an

obligation under either federal or state law to accommodate an employee's request for "a work schedule of no more than 40 hours a week."  Defendant also contends it was not required to engage in the interactive process until Plaintiff provided a work release from her doctor, and, according to Defendant, Plaintiff did not cooperate in the interactive process by providing such a release.

Plaintiff, in turn, contends she is a qualified individual with a disability and asserts Defendant refused to allow the interactive process to begin in violation of Defendant's obligations under both federal and state law.

**I.   Standards ADA/OADA Claims**

Both the ADA and OADA ensure fair opportunities in the workplace for qualified individuals with disabilities by prohibiting discrimination against those individuals and by requiring employers to reasonably accommodate their disabilities. 42 U.S.C. § 12112(a); Or. Rev. Stats. § 659A.118.  *See also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477-78 (1999).

The ADA provides in pertinent part:

> No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).

The term "discriminate" includes "not making reasonable

accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A).

The *prima facie* elements of a failure-to-accommodate claim under the ADA and the OADA are the same. See Or. Rev. Stats. § 659A.139(1)(OADA "shall be construed to the extent possible in a manner that is consistent with any similar provision of the federal [ADA]."). See also *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir. 2015). To state a *prima facie* case for failure to accommodate under the ADA, Plaintiff must allege she (1) is disabled within the meaning of the ADA, (2) is a qualified individual able to perform the essential functions of the job with reasonable accommodation, and (3) suffered an adverse employment action because of her disability. *Samper v. Providence St. Vincent Med. Ctr.*, 675 F.3d 1233, 1237 (9th Cir. 2012).

"[A] plaintiff in an ADA case at all times bears the ultimate burden of establishing . . . he has been the victim of illegal discrimination based on his disability." *Knight v. U.S. Food and Drug Admin.*, No. 3:13-cv-01347-BR, 2013 WL 6530939, at *5 (D. Or. Dec. 12, 2013).

**II. Plaintiff has not shown she has a qualifying disability that substantially limits a major life activity**.

11 – OPINION AND ORDER

Defendant contends Plaintiff does not have a qualifying disability for purposes of the ADA/ODA because the undisputed factual record establishes she is able to work a 40-hour work week. Defendant also contends Plaintiff's inability to work more than 40 hours per week does not mean she is "substantially limited."

Plaintiff, in turn, contends her disability is not limited to a 40-hour work restriction, and there is at least a genuine issue of material fact regarding her disability that precludes Defendant's Motion for Summary Judgment.

### A. The Law

The term "disability" is "construed in favor of broad coverage of individuals." 42 U.S.C. § 12102(4)(A). An individual is "disabled" within the meaning of the ADA/ODA if she has "a physical or mental impairment that substantially limits one or more major life activities" or if her employer regards her "as having such an impairment." 42 U.S.C. § 12102(1)(A); Or. Rev. Stats. §659A.104(1)(a). A "substantial limitation" is one that "limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). *See also* Or. Rev. Stats. § 659A.104(3).

"An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. § 12102(4)(C). Pursuant to regulations promulgated by the Equal Employment Opportunity

12 – OPINION AND ORDER

Commission (EEOC):

> An impairment is a disability . . . if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting.

29 C.F.R. § 1630.2(j)(1)(ii). Determining whether an impairment is substantially limiting "requires an individualized assessment." *Id.* § 1630.2(j)(1)(iv). *See Weaving v. City of Hillsboro*, 763 F.3d 1106, 1111 (9th Cir. 2014).

**B.   Analysis**

Plaintiff contends she qualifies as an individual with a disability because she suffers from physical and/or mental impairments. For example, Plaintiff alleges in her FAC that she

> suffers from one or more physical and/or mental impairments, which substantially affect one or more major life activities, including but not limited to communicating, speaking, writing, self-care, walking, balance maintenance, manual dexterity, interacting with others, and/or working. Plaintiff's impairments substantially affect one or more major bodily functions, including her neurological, brain, and musculoskeletal systems.

FAC ¶ 7.

As noted, on December 7, 2015, Plaintiff requested an accommodation in her job duties under the ADA "due to depression."

On March 4, 2016, Plaintiff completed an Activities Questionnaire as part of her claim for disability benefits from Liberty Life. Plaintiff stated she suffers from "severe

degenerative disc disease – lumbar," and she can only sit for one or two hours, stand for one hour, and walk for 30 to 60 minutes. She also stated she experiences "multiple headaches," which include migraines and results in nausea that "prevent[] her from engaging in gainful employment." Plaintiff also points to the findings of Defendant's reviewing physician that Plaintiff "had a history of migraine headaches, low back pain and right sided radicular pain." Plaintiff, however, has not presented for the record on this Motion any evidence of a substantial limitation or restriction on her daily activities based on any of these conditions. In fact, the record only reflects she is limited to working a 40-hour work week. The issue, therefore, is whether Plaintiff's inability to work overtime (*i.e.*, more than 40 hours per week) constitutes a disability for purposes of the ADA/OADA.

The Ninth Circuit has not explicitly addressed this issue. Other courts, however, have held an employee is not "substantially" limited under the ADA if she "can handle a forty hour work week but is incapable of performing overtime due to an impairment." *Boitnott v. Corning Inc.*, 669 F.3d 172, 175 (4th Cir. 2012)(citing cases from the First, Third, Fifth, Sixth, and Eighth Circuits). In *Boitnott* the Fourth Circuit concluded "an employee under the ADA is not 'substantially' limited if he or she can handle a forty hour work week but is incapable of performing overtime due to an impairment." *Id.* The *Boitnott* court found there was not any evidence that the plaintiff's "inability to work overtime significantly restricted his ability

to perform a class of jobs or a broad range of jobs in various classes." *Id.*

Although the Ninth Circuit has not addressed this exact issue, it has determined a plaintiff must establish that her disability substantially limits her ability to work. For example, in *Neal v. Kraft Foods Global, Inc.*, the Ninth Circuit concluded there was not a triable issue of material fact as to whether the plaintiff was disabled because the plaintiff did not provide any evidence of a substantial limitation in her ability to work from which a jury could find she was disabled. 379 F. App'x 632, 634 (9th Cir. 2010). The parties agreed the plaintiff had a physical impairment that limited her major life activities of sitting, standing, and walking, and the evidence showed the plaintiff should limit her sitting to six hours, standing to two hours, and walking to four hours in an eight-hour work day. The Ninth Circuit noted the only issue was whether the plaintiff's limitations in these activities was substantial, and the court pointed out that there was not any evidence in the record that established the plaintiff was restricted in her work activities. Based on the record the court concluded there was not a genuine dispute of material fact, and the employer, therefore, was entitled to judgment as a matter of law.

In *Weaving v. City of Hillsboro* the Ninth Circuit similarly rejected a claim by a police officer that his diagnosis of ADHD was a qualifying disability under the ADA because the evidence showed the officer "was in many respects a skilled

police officer" and was not "limited in his ability to work compared to 'most people in the general population.'" 763 F.3d 1106, 1112 (9th Cir. 2014).

In *Wong v. Regents of University of California* the Ninth Circuit also concluded "merely having an impairment does not make one disabled for purposes of the ADA." 410 F.3d 1052, 1067 (9th Cir. 2005). In *Wong* the plaintiff asserted he was disabled because he had a learning disability that prevented him from meeting the academic requirements at the defendant's medical school. The Ninth Circuit noted the plaintiff's contention that he was disabled "in the activity of learning" was "implausible" in light of his academic achievements in the first two years of medical school without any accommodation. *Id.* at 1066. The court also concluded the plaintiff did not present sufficient evidence of a substantial limitation of a major activity of daily living to establish a triable issue of fact. *Id.*

Here Plaintiff's treating physician indicated in January 2015 that Plaintiff was able to return to work limited to eight-hour work days with scheduled breaks. It is significant that Dr. Harper did not set out any other limitations and, in fact, Dr. Harper testified she considered this a "full duty" release. As noted, in February 2015 Plaintiff returned to work. There is not any evidence in this record that any physician limited Plaintiff's work due to depression.

Although Plaintiff may have some disabilities, the record on this Motion does not reflect any such disabilities

substantially limit her daily activities to the extent that she cannot work a 40-hour work week.  As noted, Plaintiff is incapable of performing overtime due to an impairment, but, nevertheless, she is able to perform her regular job duties during an eight-hour day.  In fact, Plaintiff testified she is currently employed in a similar position with another insurance company, has the same health conditions and limitations that she had when she worked for Defendant, and is able to perform the duties of her current job.

On this record the Court concludes there is not a genuine issue of material fact from which a reasonable jury could conclude Plaintiff is disabled for purposes of the ADA or OADA.  Accordingly, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DISMISSES** Plaintiff's Complaint.  With this disposition, the Court need not address any remaining issues.

## **CONCLUSION**

For these reasons, the Court **GRANTS** Defendants' Motion for

Summary Judgment and, accordingly, **DISMISSES** this matter with prejudice.

IT IS SO ORDERED.

DATED this 12th day of April, 2018.

/s/ Anna J. Brown
_____
ANNA J. BROWN
United States Senior District Judge